FOR THE EASTERN DISTRICT OG WISCONSIN

Mr. Victor L. Robinson #213846
Foxlake Correctional Instutition
Post Office Box 200
Foxlake Wisconsin 53933

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WISCONSIN

| | |
|---|---|
| VICTOR L. ROBINSON<br>Plaintiff<br>V.<br>A. Sandahl,<br>Wayne Olson,<br>Kevin Kaczmarek,<br>Jason R. Mentzel,<br>Wayne Stolpa,<br>Jacob Carruthers,<br>Brandon Kuehl,<br>Thomas J. Gomach<br>Lucas Weber,<br>De Wayne Grey,<br>Matthew Schlicht,<br>Defendants | Case No.________<br>CIVIL RIGHT'S COMPLAINT (§1983)<br>Trial By Jury Demand |

U.S. District Court Wisconsin Eastern FEB 24 2026 FILED Clerk of Court

CIVIL RIGHTS ACT COMPLAINT FILED UNDER 42 U.S.C. §1983

Preliminary Statement:

COMES NOW, Victor L. Robinson #213846, (Robinson) Pro se, who presents the following Civil-Rights Complaint and Claim for Compensatory, Punitive, Declaratory Relief as follows:

a). Robinson is a resident of the Wisconsin Department of Corrections (WDOC) and is currently assigned at Fox Lake Correctional Institution, during the time of this incident, Robinson was assigned at the Oak Hill correctional Institution. Fox Lake Correct. Inst. is located in Dodge County. This Complaint is filed to 42 U.S.C. §§§ 1983, 1985, and 1986 against

the state prison attendents employed by WDOC but assigned at Oak Hill Correctional Institution (OCI).

Judicial Jurisdiction Statement: 28 U.S.C. §1367 (a)

Pursuant to 42 U.S.C. §§ 1983 , 1985 and 1986, Robinson is seeking redress in Federal District Court "Supplemental Jurisdiction" against Correctional Officials employed by the state and acting under color of state law who deprived Robinson of rights guaranteed by the Federal and State Constitution and other Federal Laws, Id. ; See. also Oklahoma City V. Futtle, 471 U.S. 808, 817, N.14 (1985); Bridges V. Gilbert, 557 F.3d 541, 552 (7th Cir. 2009). This district court has jurisdiction to preside over claims brought §1983 as prescribed by 42 U.S.C. §§ 1331 and 1343 (A)(3)(4); See. also Moher V. Gagne, 448 U.S. 122, 129. N.11 (1980); Chapman V. Houston Welfare Rights Org., 441 U.S. 600, 602-03 (1979). Consistent with Rule 20 (A)(2)(a), Fed. R. Civ. P., a plaintiff may join multiple person in one action as defendants must arise out of "the same transaction, occurrence, or series of transactions or occurrences; "

The claims must present a "question of law or fact common to all defendants." Id. See. also sub. (A)(2)(b), Fed. Civ. P. Finally, pursuant to 28 U.S.C. §§ 131, 2201, 2202, 2283, and 2284, the District Court has jurisdiction to impose Monetary, Injunctive and Declaratory relief, See. also Rule 57 and 65 Fed. R. Civ. P.

b). Venue Statement:

This lawsuit is properly vended in the Unites States District of the Eastern District Court of Wisconsin under 28 U.S.C. §1391, [B], as the actions complained about began at (OCI) in Oregon Wisconsin. See. also Carillo V. Briggs, 444 U.S.C. 527, 544 (1980).

Notice of Claim Statement:

A Notice of Claim of damage and injury in Wisconsin, is filed by a state prisoner pursuant to Wis. Stats. §§ 893.82 (3) and (5), must be notarized and sent by certified mail to the Wisconsin Attorney General; however under Sub. (3), a notice of claim does not apply to claims for either injunctive or declaratory relief. See. Lewis V. Sullivan, 188 Wis.2d 157, 524 N.W.2d 630 (1994).

While the filing of a notice of claim of damage and injury is required to successfully prosecute state tort claims in Wisconsin, it is not part of the Exhaustion of Administrative Remedy procedures 42 U.S.C. §1997 E. (a) and 1997 Wis. Act 133, nor is it a prerequisite to prosecuting in the District Court §1983 claims. See. Blas V. Endicott, 31 F.Supp.2d 1131 (E.D. Wis. 1999).

c). Exhaustion of Administrative Remedy Statement:

Consistent with Jones V. Bock, 549 U.S. 199, 127 S.Ct. 910 921-22 (2007). a prisoner is not required to plead or demonstrate exhaustion in the §1983 complaint; notwithstanding, that Robinson in the instant case has filed with the WDOC Secretary Statutory grievances concerning the matter complained about in this complaint under Wis. Stat. §§301.045 and 301.29 (3), and has further prosecuted Offending Complaints ("OCI" hereinafter) through the inmate Complaint Review System ("ICRS" hereinafter) to their absolute end or other such appeals under Wis. Adm. Codes §§ DOC-310.01, DOC-310.04, and DOC-303.76 (7)(d) satisfying 42 U.S.C. §1997 E (a), See. also Booth V. Churner, 532 U.S. 731, 734-41 (2001); Woodford V. Ngo, 548 U.S. 81, 90-91 (2006).

Prison Officials don't have to accept Robinson inmate complaint, but Robinson must give or present them with an opportunity to do so, in order to fulfill Robinson obligations of prison Administrative Review Remedies exhaustion understandings...With the Late Filing, and Request submission of "good cause" therefore [ Robinson filed number OCI-2025-14165 10/03/2025, Robinson filed complaint OCI-2025-15161 placed in the mail box by OCI Sgt. Burke second shift 10/09/2025, it was not acknowledged until 10/24/2025 and it was rejected for being filed untimely. Robinson filed a third complaint OCI-2025-15052 received 10/20/25, acknowledged 10/22/2025 it was rejected for being filed untimely].

The claim by the complaint examiner that Robinson complaint was beyond the 14-day time limitation, is fraudulent; Wilson V. Liddell, 291 F.Supp.2d 811, 819 (D.C. Ind.) ("In theory, 'requiring administrative review does not foreclose a prisoner's ability to file suit, it merely creates a necessary precondition. The requirement is not designed to stop prisoners from filing suit, but rather to facilitate the litigation process.'

d). Victor L. Robinson #213846, Pro se plaintiff, pursuant, to Wisconsin Statue §893.82 based upon the defendants actions, they have committed and continue to commit crimes against Robinson in violation of Wisconsin State Statutes, §946.12 (4) & (5), Misconduct in Public Office; §940.29, Abuse of Resident in a Penal Facility. §946.72, §946.73, Fabricating Evidence and Creating False Public Records including conduct report #00478500, #00234519, #00485340.

e). Robinson is looking for relief under Wis. §968.26, alleging that state office refused to do a known, Mandatory, Nondiscretionary, Ministerial Duty.

f). Robinson raises state law claim under Wis. Stat. §227.10, Wis. Adm. Code DOC §309.155, and common law doctrine of Intentional Infliction of Emotional Distress.

Robinson raise a First Amendment Due Process, Fourteenth Amendment Due Process, Procedural Due Process Violation, Free Speech, Freedom of Expression, Religious Discrimination, Free Exercise of Religion, RLUIPA Violation, Symbolic Speech, Retaliation, and Access to the Court Violation. Slander, Fefamation.

9). Robinson was specifically denied a Fifth Amendment Due Process, Fifth Amendment equal Protection Violation, RFRA Federal Violation, Deliberate Indifference 8th Amendment, Class One Fourteenth Amendment Equal Protection Claim Civil Rights Action. Robinson seeks Monetary Damages, Declaratory Relief, Punitive Damages.

## H). CAUSE OF ACTION PARTIES

1). Victor L. Robinson #213846 (Robinson) is a person who is serving a lawful conviction in the WDOC and Robinson is currently assigned to Fox Lake Correctional Institution Post Office Box 200 Fox Lake Wisconsin 53933.

2). The defendants alleged that "Emails Robinson was sending to his son Steven Davis residents were gang related, The Moorish Science Temple Green Pamhlet called the Oral Statement and according to the defendants was a fraction of the Moorish Science Temple Circle Seven Koran is gang related, the

Book Exhuming of a Nation, Moorish American History #700 pages, enclosed also three Moorish Circle Seven Korans, Fourteen Constitutional Bylaws and additional Bylaws, Moorish American Prayer, Branch Information Moorish literature all were gang related and the book was not allowed, See. DOC-9 08/20/2025, #00478500.

4). Robinson provided receipts for all the books and materials, See. receipts 07/10/2006, 03/17/2022.

5). "BOOKS RELIED ON TO FIND ROBINSON GUILTY"

The Moorish Science Temple Circle Seven Koran. The Moorish Science Temple Green Pamhlet called the Oral Statement. The Moorish Science Temple Exhuming of a Nation Book and all mentioned materials were gang related according to the defendants, See. DOC-84 2 of 3.

6). The four year old Social Media Content referencing Robinson in conduct report #00234519 dated 02/22/2022 that belong to another person was gang related and relied on to find Robinson guilty at his disciplinary hearing, See. DOC-84 2 of 3.

7). Robinson is a member of the Moorish Science Temple of America. My religion was founded 1913 A.D. by the Prophet Noble Drew Ali. OUR AUTHORITY, (Copy) Book 521, Page 579 State of Ill

Cook County ss No. 10105905.

CORPORATION-Religious-Affidavit of Organization Form No. 1099. State of Illinois, County of Cook.

8). ss

1928 AUG. 1: PM 252

AND RECORDED IN BOOK

PAGE

EXHIBIT-OUR-AUTHORITY

The defendants said that, the Priniples "Love, Truth, Peace, Freedom, and Justice, the Five Pointed Star is gang related, See, DOC-9, 08/20/2025.

9). The Koran Question for Moorish Americans, Moorish American Prayer. Allah the Father of the Universe, the Father of Love, Truth, Peace, Freedom, and Justice, Allah is my Protector, my Guide, and my Salvation by night and by day, through His Holy Prophet, Drew Ali (Amen).

10). Question #20. What do the five point represent? Answer, Love, Truth, Peace, Freedom and Justice.

11). "Questionnaire and Additional Laws for the Moorish American."

The Moorish Americans

(By The Prophet Noble Drew Ali)

12).

(See. Exhibit-Question For Moorish Americans, page-1,2,7, Back Cover)(See. Exhibit-Moorish American Koran page-59, and Chapter XLVII). Love, truth, Peace, Freedom, and Justice, In Koran.

13). Wayne Olson Warden, A. Sandahl Complaint Examiner, Kevin Kaczmarek Security Director, Jason R. Mentzel Security Threat Group Coordinator, Wayne Stolpa unit-12 Case Manager, Jacob Carruthers Lt. Security Threat Group Coordinator, Brandon Kuehl Disciplinary Hearing Officer.

14). Lucas Weber Former Security Director at Portage Correct. Inst. Former Unit Manager at OCI was demoted to a Sgt. at OCI, Sgt. Thomas J. Gomach Advicate for Robinson, De Wayne Grey Social Worker for Robinson, Matthew Schlicht C/O escorted Robinson to disciplinary hearing.

15). Wayne Olson with the WDOC who is in charge of OCI respectfully at least in part, has the duties included under Wis. Stats. §302.04 and Wis. Adm. Codes §§ Doc 306.03 and DOC 306.04. At all relevant times to this claim, Wayne Olson (Olson) Kevin Kaczmarek (Kaczmarek), A. Sandahl (Sandahl), Jason R. Mentzel (Mentzel), Wayne Stolpa (Stolpa), Jacob Carruthers Carruthers), Brandon Kuehl (Kuehl), Thomas J. Gomach (Gomach), Kucas Weber (Weber), De Wayne Grey (Grey), Matthew Schlicht (Schlicht)

acted under color of state law and are being sued in the defendants individual and official capacities where the defendants created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such policy or customs were grossly negligent in supervising subordinates who committed the wrongful actions below; and exhibited deliberate and callous indifference to the rights of prisoners by failing to act on information indicating that unconstitutional acts were occurring. Failure to adequately train security staff, was sent numerous correspondence sufficient to give notice of an impending violation and took no action; and failing to correct practices within defendants area of authority when defendants knew or reasonably should have known about the unconstitutional practices.

i). **CAUSE OF ACTION BY PARTIES**

16). On 08/20/2025 Defendant Carruthers alleged in conduct report CR#00478500 that the defendant was made aware of possible Security Threat Group (STG) activity taking place within OCI via DOC institution issued tablet emails , between 07/08/2025 and 08/07/2025, Victor L. Robinson #213846 (Robinson) sent out numerous emails to Steven Davis (Robinson's son) discussing "Mother Land Tradition Inc. which is a group created by Robinson that has been documented in WICS stating that Robinson is believed to be the founder of the group. See. (March 30th 2015 Memorandum).

17). Carruthers said that the emails Robinson was sending to his son Steven Davis (Davis) was gang related because Robinson called a group "the five." See. DOC-9 08/20/2025.

18). Inresponse to the above statement by carruthers: "Start Your Own Nonprofit Organization" The Founder may serve as the Board President, if founder is to be the executive director, the founder may pick a board president and together they find and install the other three board executives. "Then the Five of them can work on pulling together board members," "The total number of which is directed by state regulations and the Organization's Bylaws." See. (page-27).

19). Carruthers claim many documents were confiscated at (Wisconsin Secured Prison Facility)(WSPF) Mother Land Tradition Inc. documents in "2013" it should be noted Mother Land Tradition Inc. wasn't started until 03/30/2015 permission to start this Nonprofit Organization from Warden gary Boughton and Captain Gardner of WSPF, See. (Memorandum 03/30/2015).

20). Carruthers claim during a targeted cell search, he conficated a "Green Pamhlet" which is literature accociated with the "Black Stones a Gang, this Green Pamhlet is a fraction of the Mootish Science Temple Circle Seven Koran...Within this

Green Pamhlet, the following words are underlined in red ink pen: Love, Truth, Peace, Freedom and Justice. In his training, the five words are recognized, are related to the "5-points of the people's nation "Star" a "Symbol utilized by multiple factions of a (STG) group, See. (DOC-9 CR#00478500 08/20/2025).

21). Inresponse to Carruthers claim: Love, truth, Peace, Freedom and Justice, is in the Koran Questions for Moorish Americans...it's in the Moorish Science Temple of America Circle Seven Koran page-59, Chapter XLVII...It's in the Questionaire and Additional Laws for the Moorish American page-7 Act-3...It's in the Moorish Literature page-21, See. (Moorish Koran, Koran Questiom, Moorish Constitutional By Laws...It's in the Moorish American Prayer.

22). Carruthers said Robinson tried to tell him that was his Circle Seven Koran, Carruthers said the Green Moorish Pamhlet called the oral Statement was gang related because it was a fraction of the Moorish science Temple of America Circle Seven Koran even though the Moorish Circle Seven Koran is allowed and so is the Moorish oral Statement, See. (receipts for all mentioned above materials, 07/10/2006, 03/17/2022).

23).Inresponse to Carruthers above claim, the Moorish Science Temple Circle Seven Koran is allowed, the general population may

have access to this Moorish Circel Seven Koran and other Moorish Literature by accessing the religious library App. This App is offered to the general population through the Department of Corrections State issued "tablet" it should be noted that the librarian at OCI sent Robinson a DOC-643 form saying that the above Koran was in fact allowed by the DOC, See. (09/03/2025).

24). While housed in Special Housing, Robinson was issued complaint number #00478500 by an unknown staff member, unsigned, undated by person delivering the CR#. as required by DOC policy.

Weber delivered the same conduct report to Robinson and offered Robinson "60-days in hole and transfer to a higher level secured inst. Robinson chose a full due process hearing...Weber responded with, I knew you wasn't gonna accept my offer, 08/28 2025.

25). It should be noted that Robinson wrote Weber on a DOC-643 request form, concerning cell search and the taking of Robinson religious materials, the Moorish Science Temple Circle Seven Koran and the Green Moorish Oral Statement Pamhlet..Weber response was copies of your letter and this request have been sent to the Security Director, See. (request slip and letter dated 08/20/2025.

26). Before this CR# was issued to Robinson, Robinson worked in restrictive housing, and Weber was Robinson supervisor.

27) Robinson hearing date was set for 09/11/2025, then it was changed to 09/08/2025 a day before Robinson was to be released on parole 09/09/2025.

28). Sgt. Gomach was Robinson's advicate. Robinson asked Gomach to find out who's conduct report was that mentioned in Robinson's conduct report CR#00478500, CR# 00234519, Gomach response was I will see what I can do to find out who this person is. Robinson explained to Gomach that he needed copies made from his nonprofit book son that Robinson could show the disciplinary hearing where the language came from the "the five."

29) Robinson also wanted copies made from the book Exhuming of a Nation so that Robinson could show the committee all the above religious materials were in this #700 plus page religious book...Robinson asked Gomach again did he find out who this person was who was issued conduct report CR#00234519 and about getting the requested copies Robinson needed and he would pay for the copies... Gomach response was, no he did not know who the person was, who was issued CR#00234519 mentioned in Robinson CR#00478500 and just bring the books Robinson wanted

copies of to show the committee. Gomach told Robinson the two people Robinson requested to be witnesses at the hearing, Gary Boughton and Administrative Captain Gardner both worked at WSPF had retired and cannot be found. Robinson asked Gomach what is the evidence upon which the discipline ruling is based on, Robinson wanted a reasonable opportunity to be able to explain his actions and alert the disciplinary committee to possible defects in thee evidence....Robinson asked are there any photo's or other physical evidence Robinson needed to be prepared for since you are Robinson's advocate, you should be able to answer this question, Gomach replied he doesn't know.

30). Robinson accepted the assistance of a DOC: 303.78 Staff Advocate (even though they are not allowed to assist DOC Prisoners with Gathering Evidence and/or preparing a defense), or call any witnesses (Since past experience Robinson was already aware that their is no defense to the (STG) Officials Declaration of Gang Related Activities at a DOC Disciplinary Hearing, "Sham" Procedure(s) don't fulfill Robinson Federal Due Process entitlements...Advocate assistance with a defense in Robinson case was just a formality. Robinson was hopeful and was reasonably going to rely on this advocate because, Robinson also worked for Gomach in restrictive housing...So Robinson relied on this regulation promulgated for his guidance and benefit, Robinson prayed he would not suffer substantially because of Gomach failure to do his job...at best it would show (Due Process Violation Occured).

J). DISCIPLINARY HEARING

31). Conduct Report #00478500 08/20/2025, gave rise and was issued solely on the basis of Robinson sending emails to his son Steven Davis (Davis) place of residence, teaching Davis how to start a Nonprofit Organization. Robinson was in possession of a Green Moorish Pamhlet called the Oral Statement, Robinson provided receipts for the religious material, See. (07/10/2006).

32). Adjustment Committee consisting of hearing officer Kuehl, Unit-12 Manager Stolpa, Gang Coordinator Investigating Captain Mentzel, Staff Representative Sgt. Gomach hearing date 09/08/2025...Time 10:00 AM till 1:oo PM.

33). C/O Schlicht escorted Robinson to the hearing. Robinson brought two books as evidence suggested by advocate Gomach. Before hearing started Robinson asked the committee who is the person mentioned in Robinson conduct report, the person was issued CR#00234519, committee did not respond to Robinson question, so Robinson asked again and Kuehl replied we will get into that.

34). During the hearing Robinson explained that he was teaching his son how to start his own Nonprofit organization through emails and provided the Nonprofit Book Robinson was teaching his son from to the committee they refuse to look at.

35). 35 to 45 minutes into the hearing, Robinson asked again, who is the person that was issued CR#00234519 mentioned in Robinson CR#00478500...Mentzel said Donnelle Jones, Robinson said, this committee knew this all along and refuse to provide Robinson with this information because this committee knew that Robinson would call Donnelle Jones (Jones) as a witness, it should be noted to this court, Jones is Robinson's son.

36). The committee withheld "Time, Date, Name, Incident information" from Robinson, denying him evidence Robinson is entitled to know...Mentzel and Stolpa introduced alleged Social Media Gang Related Content referencing Robinson and throwing up gang signs...Robinson asked can he see this content and pictures, the committee said no "its confidential."

37). After the hearing Robinson reached out to his son Jones and asked him to forward a copy of that conduct report #00234519 to Robinson, upon receiving the report, Robinson found out, the alleged gang related social media content came from Jones CR#00234519 and it was not "referencing Robinson," this CR#00234519 and content was "four-years-old." See. (DOC-9 02/24/2022, CR# 00234519).

38). Robinson had never received a conduct report for CR# 00234519 four-years ago...Robinson asked the committee where

is the Religious Green Pamhlet, called Moorish Oral Statement taken from Robinson during the cell search on 08/20/2025. Robinson provided a receipt to the committee for the religious pamhlet, the committee ignored Robinson question...religious item taken was not at the hearing, or mentioned in the disposition, evidence relied on to find Robinson guilty...Nor was Robinson given a DOC-237 receipt for the confiscation of this religious item...Nor was it ever given back to Robinson to this day even though Robinson provided a receipt for the property, See. (07/10/2006).

39). Robinson tried to explain to the committee that his religious materials were not gang related and in fact is allowed. Robinson showed the committee his "religious book, Korans, Divine Constitution and Bylaws, Additional Bylaws, Moorish Literature, Koran Questionnaire for Moorish American, Moorish American Prayer, three Korans inside the Exhuming of a Nation and over #700 pages and other documents inside this book was gang related and not allowed according to the committee. Robinson was told that book haven't been allowed since 2016 and you cannot have this book and must send it out or we will destroy the book, give the book to Sgt. Gomach and an address to where you want this book to go...Gomach came to the cell front after the hearing and got the book and sent it to property to be sent out, See. (Disbursement Request Slip Dated 09/08/2025, $8.22).

41). Robinson provided receipts for the Religious materials taken from him and relied on to find Robinson guilty at the disciplinary hearing. All materials are and were allowed within the department of corrections, See.(DOC-84 2 of 3).

42). According to the Department of Corrections Website use of Social Media Content at an Inmate Disciplinary Hearing must be Relevant, Reliable, and can be Authenticated other-wise it "Violates Inmate's Due Process." This four-year-old Social Media Content is not Relevant, Reliable, or can be Authenticated, See. (Use of Social Media Content at Inmate's Disciplinary Hearing DOC-Policy).

43). j. PROPER NOTICE

Robinson received no proper notice of evidence to be used against him, photo array, unauthenticated four-year-old social media content, the defendant Kuehl failed to articulate "specific" security concern for refusing to give notice of time, name, date, place, of offense to CR#00234519 used against Robinson at his disciplinary hearing...The committee denied Robinson the right to know the evidence which the committee disciplinary ruling is based, failure to do so deprived Robinson of the opportunity to defend himself and denied due process.

44). k. DUE PROCESS PROCEDURAL DUE PROCESS

Kuehl and the disciplinar hearing committee took Robinson Religious materials with out a proper hearing. Robinson was not allowed to "Marshall the facts" concerning his property...Robinson was given a direct order from the committee to give his property to the staff representative to be sent out or destroyed, See. (Disbursement dated 09/08/2025 $8.22).

45). "Kuehl fingered printed Robinson and knew Robinson was going to be released 09/09/2025...Kuehl allowed Mentzel and Stolpa to introduce false inculpatory Evidence such as four-year-old social media content, that did not reference Robinson as the committee alleged...Kuehl allowed Mentzel, Stolpa, Carruthers, Kaczmarek, Olson to take Robinson Religious Materials...Kuehl allowed Mentzel and Stolpa to lie about Religious Materials were not allowed, Koran Exhuming of a Nation, Religious Book...Kuehl relied on Robinson religious mterials to find Robinson guilty, See. (DOC-84 1 of 3).

46). l. IMPORTANT RELEVANT INFORMATION

See. DOC-643 Request Slip from librarian at OCI Circle Seven Koran is allowed dated, See. (09/03/2025).

See. DOC-643 Request Slip from Chaplan Coates-FCI, Robinson you may practice your religion as you see fit and you can order Koran, dated 10/30/2025.

11/16/2025 Cpatain Beaugrand told Robinson that she did not know much about Robinson religion, but she does know that Circle Seven koran is not gang related and is allowed...Fox Lake Correctional.

47). Department of Corrections, issues too its general population a "tablet" inmates can access the religious library app, and view the "Circle Seven Koran" its avaliable to over 25,000 inmates accept "Robinson," because the Circle Seven Koran is gang related, See. Evidence Relied on to find Robinson guilty(DOC-84 1 of 3, DOC-9 CR#00478500 date 08/20/2025).

Robinson while housed at the Fox Lake Correctional Institution. Robinson wrote to Upper-Level Security and requested access to the alleged gang related emails the committe said was not allowed, "even though the emails were and still on Robinson tablet." Robinson Robinson needed the emails for litigation purposes. Security Staff responded back in writing, asking to meet with Robinson face too face, Robinson agreed, See. (DOC-643 10/29/2025).

48). CONFLICT INFORMATION

Robinson wrote to Warden Olson concerning the taking of his religious materials 09/13/2025, he did not respond back to Robinson DOC-643 form.

49). Robinson appealed the Disciplinary Hearing Committe decision on 09/08/2025, to Olson 09/15/2025 and the hearing officer decision was affirmed 09/30/2025 CR#004785.

Olson reason)s) The conduct report was reviewed by a subject "matter expert" in the field of (STG) activity and also consulted with former DAI Security Chief Miller and Captain Bonlender from DOC, DCI finding of guilt and disposition are appropriate.

50). Whiled housed at FCI Robinson met with Gang Coordinator Captain Beaugrand an "expert" in the field of (STG) activity. Beaugrand said to Robinson that she tried to contact OCI staff

concerning why Robinson was sent to FCI, the social media content used against Robinson confused her...OCI staff never returned her phone calls and text.

51). Beaugrand asked Robinson about the social media content used against him at the hearing, at that time Robinson could not explain where the social media content came from because the committee would not allow Robinson to view the content because it was confidential...Captain Beaugrand responded to Robinson and said, this is what you need to do, make "sure that your attorney" "get the social media content because this fast black guy OCI was talking about is from Texas." This guy is younger than Robinson you may have the same nick name fast black, clearly social media was talking about the guy fromTexas...Captain Beaugrand said that the emails were like "black empowerment to her."

52). Captain Beaugrand said it three times to make sure that Robinson tell his attorney to get the social media content and she was going to call and speak with some one at Dodge Correct. Inst. concerning the matter since OCI won't repsond to her. Cpatain Beaugrand gave Robinson all #21-pages of the alleged gang related emails along with a property receipt to have the materials and told Robinson if he have any problems during the searching of his cell concerning the emails, contact her right away and have staff to contact her...meeting was 11/16/2025, See. ( DOC-1266 CONTRABAND PROPERTY TAG FLCI-25-0864).

53). "On 08.20/2025 Robinson received conduct report #00234519 concerning social media content used against Robinson at his disciplinary hearing the committee said Robinson could not review because it was confidential...the committe told Robinson the above CR#00234519 was issued to his son...but did not tell Robinson the social media content the committee was referencing came from Donnelle Jones' Robinson son's CR#00234519. See. (Adult Conduct Report CR#00234519 dated 02/24/2025).

54). "More conflicting information" Robinson wrote the mail room, C/O Blacketer responded, Robinson asked was the Religious Book Exhuming of a Nation on the not allowed list like Mentzel suggeted...C/O blacketer response was in writing, he said"no" it is not on the "not allowed list." See. (DOC-643 request slip 11/05/2025).

55). "All Olson had to do was call his OCI Librarian and ask was the Moorish Science Temple Circle Seven Koran, the book Exhuming of a Nation and all the above mentioned Religious Materials allowed, that would have kept him from violating Robinson right to exercise his religious belief's...he failed to do choosing to ignore Robinson appeal addressing the issue to him.

56). Security Director Kaczmarek, he failed to adequately train security staff, was sent numerous correspondence sufficient

to give notice of an impending violation and took no action; failing to correct practices within defendants area of authority when defendant knew or reasonably should have known about the unconstitutional practices...Robinson wrote to Kaczmarek concerning the taking of his religious materials, and he did nothing to address the violation, See. "six times Robinson wrote Kaczmarek (08/25/2025, 08/27/2025, 08/29/2025, 09/14/2025, 09/20/2025,).

57). After being found guilty Robinson was sent before the Classification ProgramReview Committee (PRC).

58). PRC consist of four permanent members including a member of Security Staff holding the rank of Lieutenant or higher to be designated by Warden;

59). The program Review Coordinator, to be designated by the Director of the Offender Classification;

60). A member of Social Service Staff holding the rank of social services supervisor;

61 61). An educational Representative in a Supervisor Class or a Guidance Counselor.

62).

Robinson Classification PRC Hearing was held 09/12/2025 and Weber was on the Committee, the four members was unanimous including Weber in giving Robinson 60-days separation a transfer to a higher security institution.

63). "SLANDER"

Social Worker Grey was very unprofessional and inappropriate Grey was calling Robinson's daughter Sparkle Jasmin Robinson after she called the institution like the rest of Robinson's family were doing trying to find out why Robinson wasn't released on 09/09/2025.

64). grey asked Robinson what should he tell his family, and Robinson said if his daughters call, just let them know he will call them soon as he could. Sparkle Jasmin Robinson (Sparkle) and Dashawn Jekins listened and recorded a call from Social Worker Grey...Where he said that, Robinson was a gang leader, who was guilty, who had a folder full of gang lititerature, and his religion was gang related, he did not want Sparkle to waste her money. Robinson called home and was told this by his daughters 10/06/2025 2:15:PM.

65). Grey continued to call Robinson daughter Sparkle even after Robinson asked him to stop...Robinson spoke with C/O Burger first shift, and C/O Brown first shift concerning the matter and both said Grey cannot do that and he was wrong and that Robinson should write too Captain Younger because he took Unit Manager Weber place, Weber was "demoted" to Sgt, and Younger would be Grey boss, Robinson wrote Captain Younger and never heard back from him, 10/07/2025.

65). Social Worker Grey continued to call Robinson's daughter even after he was transfered to FCI. Robinson's daughters will testify to this in a court of law.

66). "RETALIATION"

On 09/20/2025 C/O Schlicht stoped by the cell front, and ask why are you still here...Robinson did not respond, Schlicht asked Robinson did he want a shower, and Robinson responded yes...Schlicht was still trying to make small talk. After showers, Robinson asked Schlicht how to spell his name and Schlicht said why do you need my name, are you going to write me up...Robinson replied no I am not, I need your name because I am going to call you as a witness in this law suit I am going to file concerning the disciplinary hearing and since you were there to witness the hearing I am calling you as a witness.

67). Schlicht gave Robinson the correct spelling of his name and came back to Robinson cell front and said he did not want to be a witness against any staff member, and wasn't gonna to testify against anyone.

68). Schlicht came back to the cell front three or four times, the last time he came, he said to Robinson "Mentzel said to write you a conduct report." Robinson replied for what, Schlicht said why did you ask me to go on social media to look for the social media used against you at the hearin, Robinson said he did know such thing...Schlicht responded then why did you ask

me for a burner, Robinson said he did not know what a burner was and why are lying on Robinson and walked away from the door.

69). Robinson was transfered to FCI, Schlicht wrote CR# 00485340 on 09/20/2025 for Soliciting Staff, and Group Resistance and Petitions...offered 16-days 24-hour room confinement, Robinson chose a full due process contested major disciplinary hearing...conduct report was issued almost two months later...hearing for this conduct report was held 11/14/25.

70). Security Director violated DOC-303.68 REVIEW By Security Office (1) The Security Director shall review any conduct report not processed under s. DOC-303.76 or 303.77 within (5 working days) Schlicht conduct report wasn't sent to Robinson until almost two months later.

71). Captain Jeremy Hanni said based on my conclusions about the testimony, the physical evidence and reasonable inference drawn from these factors, which are set forth above, I conclude the "inmate found not guilty" of 303.24 Group Resistance and Petition_Attempts and 303.30 Soliciting an Employee.

DISPOSITION CONSIDERATION: (a) the inmate's overall disciplinary record, especially during the previous 12-months. See.(DOC-84 2 of 2).

72). Robinson filed a complaint 10/09/2025 concerning Weber and Grey, failure to investigate Grey actions since at the time Weber was Grey's boss...The complaint was received 10/09/2025 but was not acknowledged until 10/24/2025.

73). According to Complaint Examiner A. Sandahl, Robinson complaint was received 10/20/2025 and acknowledged 10/22/2025. Robinson complaint was about Job, School, and Program. Sandahl assigned complaint number FCI-2025-1502 to Robinson issues.

74) "It should be noted that there is another Victor L. Robinson at OCI housed in the "Program Unit-6" before receiving conduct report #00478500 Robinson worked in restrictive housing unit(RHU) in food servery, all new inmates are housed in restrictive housing general population side. The name of every inmate in (RHU) is on the board and Robinson is responsible for feeding each inmate, thats how Robinson knew there was another Victor L. Robinson at OCI and he went to the program unit-6.

75) Robinson never filed a complaint concerning removal from job, school, or prgrams...Robinson is a High School Graduate, College Graduate, Robinson don't have any program need...Robinson wrote to the complaint examiner and told him that it was a mix-up between both Robinson's. Complaint Examiners R. Rominsky at FCI response was, he provided the document to OCI now its up

to them what they are going to do about the matter, See. R. Rominsky complaint examiner 10/29/2025, OCI received the documents 12/03/2025.

76). Robinson filed his first complaint, a Due Process Complaint after appealing Olson decision 09/30/2025. complaint number issued OCI-2025- 14165, 10/03/2025.

77). Robinson second Complaint was a Procedural Due Process complaint, filed 10/09/2025, received 10/24/2025 and acknowledged 10/24/2025 complaint number issued, it appears OCI-2025-15161.

78). Robinson filed a third complaint, a Due Process Complaint concerning Weber and Grey, according to the complaint examiner at OCI, Robinson complaint was about removal from job, school, and program. It appears this complaint assigned number was OCI-2025-15052, received 10/20/2025 acknowledged 10/22/2025 and was rejected for being untimely filed...Robinson appealed the untimely filed complaint and explained that this was not his complaint.

79). "SUPER IMPORTANT"

Sandahl acknowledged Robinson filed a complaint 10/09/25, acknowledged 10/24/2025...a complaint filed 10/20/2025 acknowledged 10/22/2025...The DOC policy do not allow inmates to file two complaint, different complains in one week, inmates are only allowed to file one complaint a week..."So how did Sandahl

receive a complaint Monday 10/20/2025 acknowledged 10/22/2025, receive a complaint Friday 10/24/2025 acknowledged 10/24/2025 Friday, two different complaints in the same week clearly a violation on Robinson if he tried to file two different complaints in the same week "yet Sandahl makes "no" mentioned of it...Sandahl cannot explain why Robinson complaint filed filed "10/09/2025 wasn't received or acknowledged until 10/24/25.

DENY ACCESS TO THE COURTS

81). Sandahl was intentional in his act to deny Robinson Access too the court's, he had plenty of time to correct this if it were an error on his part when Robinson ask that he correct this by finding his complaint, or allow Robinson to file another complaint addressing the issue...All Sandahl had to do is compare the institution number, and signature.

m). PUNISHMENT

82). "As Punishment" for being in possession of allowed Religious Materials at issue here and for exercising Robinson First Amendment Right, Freedom of Expression...Robinson "Parole Release Date was taken from him after serving over (37-years straight), Robinson spent (55-days) out of general population and was held-over in restrictive housing unit at OCI.

83. Robinson is living with limited mobility on the right side of his body including right arm, and right hand, so it was

very difficult to write with a three inch rubber pen, trying to keep up with time sensitive documents, complaints and notice of claim...Robinson will provide names of all medication he must take to manage his pain at a later date.

83). Robinson experienced loss of a number of privileges enjoyed by general population inmates relating to movement within the institution, access to the library, recreation, use of the cafeteria, phone, visits by non-inmates, showering, working, eating, possession of property items, participation in the activities of sanctioned groups, and clothing.

84). While in RHU Robinson was required to be hand-cuffed during visits and showers, subjecting and subjected to strip searches that he would not have experienced:in general population.

85). Robinson is a College Graduate, he graduated from Fox Valley Technical College, Madison Area Technical College, University of Wisconsin Baraboo College, Sauk Co, Department of Labor of Bureau of Apprenticeship and Trainning Program for Cook Hotel and Restaurant Multi-Trades Joint College Apprenticeship Program, Dental School, Custodia School, The First Peer Specialist Curriculum Program.

86). LOSS OF AUTONOMY & LACK OF PURPOSE, ROBINSON IS MADE

TO FEEL: all the above accomplishments were worthless,

Robinson is a 68 year old man and is still looked at as a gang member even though documentation prove other-wise.

87). Robinson had no control over his day-to-day living at OCI including when he wake up, what he eats, what job to work and when he have access to recreation...being in that Inst. led to feelings of dependence of and helplessness.

88). Being at OCI upper-level security did their best to make Robinson feel-like a failure...the boredom, monotony, lack of stimulation, limited access to education, job training, and other programing that can fill Robinson's time and lack of activity and mental stimulation leads to extreme stress, anger, and frustration..."This is the reason why men in OCI use unhealthy coping mechanism to manage boredom, including substance abuse."

89) Unpredictability is the cause of anziety and depression exacerbated by the unpredictable nature of that carceral environment at (OCI).

90). Rules at (OCI) are numerous many which are "ambiguous" and only enforced erratically. "Institution rules are enforced selectively depending on factors such as inmate-staff relationship, staff member's mood, the severity of the rule violation, and the convenience of the

of the rule enforeement." This lack of "clarity and predictability has contributed to Robinson's feelings of uncertainty and stress."

91). What the defendants did to Robinson was "very cruel" and it made that negative environment worse because it contributed to negative mental, health, the doubling of Robinson high blood pressure pills, and pain pill Nortriptyline, including overcrowding, various forms of violence, enforced solitude or conversely lack of privacy, lack of meaningful activity, isolation from networks, insecurities about future prospecs (work, relationships, etc).

92). The overcrowded carceral environment at (OCI) selective punitive environment set inmates on edege, this "traumatic verbal fabrication, falsification of documents, emotional assaults and dehumanization at the hands of the defendants was significantly related to antisocial behavioral tendencies for fear of being associated with (STG) groups cause Robinson emotional distress."

93). Robinson "sufferes from hypervigilance, hypersensitivity, flashbacks, trust issues is an institutionalized personal traite, like distrusting others."

94). Robinson request that the court enjoins Robinson to "reinstate Robinson to his former custody status" and give him back the "Parole that was taken form him."

95). Robinson is asking for a Declaratory Judgement, that declares the rights of Robinson have been violated by the defendants in the manner described above.

96). Compensatory damages in the amount to be determined at a later date.

97). As mitigated above and Punitive damages to be determined at a later date.

98). As mitigated above and whatever the court see fit damages.

99). Wherefore, Robinson respectfully pray, this court grant the relief sought herein.

Certification:

I, Victor L. Robinson #213846 Declare Under Penalty of Perjury Pursuant to 28 U.S.C. §1746 that the foregoing is true and correct. Executed on this 8th day of February, 2026.

Victor L. Robinson
Victor L. Robinson #213846