**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**VICTOR ROBINSON,**

**Plaintiff,**

**v.** **Case No. 26-CV-311**

**A. SANDHAL, WAYNE OLSON,**
**KEVIN KACZMAREK, JASON R. MENTZEL,**
**WAYNE STOLPA, JACOB CARRUTHERS.**
**BRANDON KUEJL, THOMAS K. GOMACH,**
**LUCAS WEBER, DEWAYNE GREY, and**
**MATTHEW SCHILICHT,**

**Defendants.**

---

## ORDER SCREENING THE COMPLAINT

---

On February 24, 2026, plaintiff Victor Robinson, who is incarcerated and representing himself, filed a complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. (ECF No. 1.) He also filed a motion for leave to proceed without the prepayment of the filing fee, and a motion to expedite screening his complaint. (ECF Nos. 2, 4.) This order resolves those motions and screens the complaint.

Because Robinson has consented to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice has consented to the limited exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding

between the Wisconsin Department of Justice, this court has jurisdiction to screen the complaint.

## MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

The Prison Litigation Reform Act (PLRA) applies to this case because Robinson was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On February 24, 2026, Robinson filed for leave to proceed without prepayment of the filing fee. (ECF No. 2) On February 27, 2026, the court issued an order requiring Robinson to pay an initial partial filing fee of $35.28 before March 30, 2026. (ECF No. 7.) On March 4, 2026, Robinson paid the fee. The court will grant Robinson's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

## SCREENING THE COMPLAINT

### *1. Federal Screening Standard*

The PLRA requires courts to screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims

that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent

standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

2. *Robinson's Allegations*

Robinson alleges that on August 20, 2025, defendant Jacob Carruthers "alleged in conduct report CR #00478500 that [he] was made aware of possible Security Threat Group (STG) activity taking place within [Oshkosh Correctional Institution]." (ECF No. 1, ¶ 16.) Specifically, Carruthers stated that Robinson was sending emails to Steven Davis, Robinson's son, "discussing 'Mother Land Tradition Inc., which is a group created by Robinson." (*Id.*) Carruthers flagged the emails as gang related because Robinson referred to the group as "the five". (*Id.*, ¶ 17.) Robinson asserts he was referring to setting up a board of directors for a nonprofit organization, and "the five" meant the five individuals who would create the board. (*Id.*, ¶ 18.) As part of the conduct report, Carruthers referenced materials that were confiscated from Robinson related to Mother Land Tradition when he was incarcerated at the Wisconsin Secure Program Facility (WSPF). (*Id.*, ¶ 19.) Robinson notes that the Warden at WSPF at the time, Gary Boughton, gave Robinson permission to start this group. (*Id.*)

Related to the conduct report, Carruthers conducted a cell search where he confiscated materials he claimed were gang related including "a 'Green Pamhlet' [*sic*] which is literature associated with the 'Black Stones' a gang." (ECF No. 1, ¶ 20.) Robinson tried to explain to Carruthers that the materials were not gang

related but were related to his Circle Seven Koran, which is a publication allowed in prison. (*Id.*, ¶ 21.)

After being notified of the conduct report, Robinson was taken to the Special Housing Unit, and defendant Lucas Weber delivered Robinson a copy of the conduct report. (ECF No. 1, ¶ 24.) Weber offered Robinson a disposition of "60-days in [the] hole and transfer to a higher-level security" institution. (*Id*) Robinson declined the offer and opted to go ahead with a full due process hearing. (*Id.*) Initially, Robinson's hearing date was set for September 11, 2025, but it was moved to September 8, 2025, because Robinson had a parole hearing on September 9, 2025. (*Id.*, ¶ 27.)

Prior to the due process hearing, Robinson was assigned defendant Thomas J. Gomach as an advocate. (ECF No. 1, ¶ 28.) Robinson requested Gomach find out information about a different conduct report (CR #00234519) referenced in his current conduct report (CR #00478500). (*Id.*) Robinson also requested that Gomach obtain copies from a book that Robinson wrote about his nonprofit as well as copies from two other religious books. (*Id.*, ¶¶ 28-29.) Robinson also wanted Gomach to help him arrange for the former WSPF Warden Boughton and WSPF Administrative Captain Gardner to be witnesses at the hearing. (*Id.*) Gomach told Robinson he would see what he could do. (*Id.*) Ultimately, Gomach informed Robinson that Boughton and Gardner had both retired and could not be found. (*Id.*, ¶ 29.) Robinson also states that Gomach was unable to assist him in any meaningful way. (*Id.*, ¶ 30.)

The due process hearing was held on September 8, 2025 from 10:00 a.m. to 1:00 p.m. (ECF No. 1, ¶ 32.) Defendant Brandon Kuehl was the hearing officer, and defendants Wayne Stolpa and Captain Jason R. Mentzel were a part of the hearing committee. (*Id.*) Defendant Correctional Officer Matthew Schlicht escorted Robinson to the hearing. (*Id.*,¶ 33.) Robinson brought two books to the hearing as evidence. (*Id.*) At the start of the hearing, Robinson asked for details regarding conduct report CR #00234519, including the person who received the conduct report. (*Id.*) The committee refused to answer the question. (*Id.*) During the hearing, Robinson "explained that he was teaching his son how to start his own Nonprofit organization through emails and provided the Nonprofit Book Robinson was teaching his son from to the committee." (*Id.*, ¶ 34.) Robinson asserts that the committee refused to consider it. (*Id.*)

Approximately 45 minutes into the hearing, Robinson again asked for details conduct report CR #00234519. (ECF No. 1, ¶ 35.) Mentzel informed Robinson that it was issued to Donnelle Jones, who is Robinson's son. (*Id.*) Robinson asserts that the committee purposely withheld this information prior to the hearing because they did not want Robinson to call Jones as a witness. (*Id.*) Also during the hearing, Mentzel and Stolpa introduced "Social Medial Gang Related Content referencing Robinson and throwing up gang signs." (*Id.*, ¶ 36.) The committee would not let Robinson examine this evidence because it was confidential. (*Id.*) After the hearing, Robinson contacted Jones regarding conduct report CR #00234519 and learned that

the social media evidence the committee considered came from this conduct report and the content was four years old. (*Id.*, ¶ 37.)

Also, 4during the hearing, Robinson "tried to explain the committee that his religious materials were not gang related and in fact allowed." (ECF No. 1, ¶ 39.) He showed the committee several religious books and over 700 pages of other documents to make his point. (*Id.*) The committee informed Robinson that these materials have not been allowed in the institution since 2016, and he would not be allowed to have them. (*Id.*) After the hearing, Gomach came to confiscate the materials and have them sent to an address of Robinson's choosing. (*Id.*)

Robinson asserts that he did not receive proper notice of the evidence to be used at his hearing, including a photo array, the four-year-old social media content, and the details of conduct report CR #00234519. (ECF No. 1, ¶ 43.) He also asserts that the committee introduced and used "false inculpatory evidence, such as four-year-old social media content." (*Id.*, ¶ 45.)

On September 13, 2025, Robinson wrote defendant Warden Wayne Olson regarding the confiscation of his religious materials. (ECF No. 1, ¶ 48.) Olson did not respond. (*Id.*) Robinson also appealed the Disciplinary Hearing Committee's decision to Olson, and Olson affirmed the finding of guilt because the evidence was considered by a subject matter expert. (*Id.*, ¶ 49.)

Robinson also alleges that defendant Security Director Kevin Kaczmarek "failed to adequately train security staff" and failed to take any action when

Robinson alerted him to the illegal confiscation of his religious materials. (ECF No. 1, ¶ 56.)

After Robinson was found guilty by the Disciplinary Hearing Committee, he appeared before the Classification Program Review Committee (PRC). (ECF No 1., ¶ 57.) Defendant Weber was on the PRC, and he and the other three unidentified members gave Robinson 60-days in segregation and ordered a transfer to a higher security institution. (*Id.*, ¶ 62.) Robinson implies that his request for parole was denied. (*Id.*)

On September 9, 2025, Robinson's daughter, Sparkle Jasmin Robinson called the institution to find out why Robinson was not released on parole. (ECF No. 1, ¶ 63.) Sparkle Robinson spoke to defendant De Wayne Grey, who told her that Robinson was a gang leader and they found "a folder full of gang literature and his religion was gang related." (*Id.*, ¶ 64.) Robinson asserts that Grey slandered him. (*Id.*)

On September 20, 2026, Robinson spoke to Schlicht, asking him for the correct spelling of his name. (ECF No. 1, ¶ 66.) Robinson responded that because Schilt was at his due process hearing, he wanted to be able to call him as a witness for a law suit he was going to file. (*Id.*) While Schlicht gave Robinson the spelling of his name, he also told him he was not going to testify against anyone. (*Id.*, ¶ 67.) A short while later, Schlicht came to Robinson's cell and told him that Mentzel ordered him to write Robinson a conduct report for asking Schlicht to search on social media for the evidence used against him at the hearing and because Robinson

requested Schlicht find him a "burner" (*Id.*, ¶ 68.) Robinson asked Schlicht why he was lying about these charges. (*Id.*) Robinson was issued conduct report CR # 00485340 for "Soliciting Staff, and Group Resistance, and Petitions." (*Id.*, ¶ 69.) Robinson was ultimately found not guilty. (*Id.*, ¶ 71.)

On October 9, 2025, Robinson filed an inmate complaint about Weber's failure to investigate Grey's slander. (ECF No. 1, ¶ 72.) On October 22, 2025, Robinson received acknowledgment that his inmate complaint was received by institution complaint-examiner defendant A. Sandhal. (*Id.*, ¶ 73.) The acknowledgment indicated that Robinson's inmate complaint was regarding "Job, School, or Program," which did not make sense to Robinson because he never filed such an inmate complaint. (*Id.*, ¶¶ 73-75.) Robinson wrote complaint examiner's officer and informed them there must have been a mix-up with another inmate, also named Victor Robinson. (*Id.*, ¶ 75.) Robinson also filed three inmate complaints related to his due process hearing, which Robinson states were improperly handled. (*Id.*, ¶¶ 76-81.) Robinson asserts that Sandhal was intentional in his mishandling of Robinson's inmate complaints in order to deny Robinson access to the courts. (*Id.*, ¶ 81.)

Robinson seeks compensatory and punitive damages as well as injunctive relief, specifically being allowed to go on parole. (*Id.*, ¶¶ 94-98.)

3. *Analysis*

Robinson's complaint is 34 pages long and contains several defendants. All of his allegations stem from the conduct report he received on August 20, 2025, for

allegedly engaging in gang-related activity and having gang-related materials in his cell.

Robinson claims that the defendants violated his First Amendment rights when they gave him a conduct report for emailing with his son and confiscated his religious written materials, stating they were gang-related. "Restrictions on prisoners' speech are constitutional if they are reasonably related to legitimate penological interests." *Turner v. Pollard*, 564 Fed. App'x 234, 237 (7th Cir. 2014) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). "In reviewing restrictions on prisoner expression, [the courts] generally defer to the professional judgment of prison administrators about the effect of inmate speech on prison safety." *Id.* (citing *Overton v. Bazzetta*, 539 U.S. 126, 132, (2003)). As such, it is not a First Amendment violation if prison officials "suppress material or activities that they reasonably believe encourages unrest or disrespect of staff, promotes the tenets of groups with violent histories, and advances activities that mimic gang structures." *Id.* (listing cases). Confiscating Robinson's materials and giving him a conduct report for suspected gang-related activities and materials does not violate Robinson's First Amendment rights. Robison may not proceed on this claim.

Similarly, Robinson may also not proceed on a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA). The standard for a RLUIPA claim is that "prison officials may substantially burden an inmate's exercise of his religion if they do so in furtherance of a compelling interest and use the least restrictive means possible." *Lindell v. Huibregste*, 205 Fed. App'x 446, 449 (7th Cir.

2006). The Seventh Circuit Court of Appeals has found that curbing gang-related activity is a compelling interest and confiscating materials is the least restrictive means available to protect that interest. *Id.*

Robinson next claims that defendants violated his Fourteenth Amendment rights when they deprived him of his property without due process. Under the Fourteenth Amendment, "[i]n order to state a claim for a procedural due process violation of a property right, [the plaintiff] must establish: (1) a protected property interest; (2) a deprivation of that property interest by someone acting under the color of state law; and (3) a denial of due process." *Booker-El v. Superintendent, Indiana State Prison*, 668 F.3d 896, 900 (7th Cir. 2012). A protected property interest is created where a plaintiff has a legitimate claim of entitlement to the property. *Id.* A legitimate claim of entitlement "is 'defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Bd. of Regents of State Colls. V. Roth*, 408 U.S. 564, 577 (1972)).

As to the first prong, because the materials were reasonably suspected to be gang-related, Robinson does not have a protected property interest. *See Munson v. Gaetz*, 673, F.3d 630, 637-38 (7th Cir. 2012) (finding that because the court already determined that the plaintiff was legitimately barred from having books for a legitimate penological interest, the plaintiff could then not have a protected property interest in the material). Even if Robinson had a protected property interest, he alleges that he was able to send the materials to an address of his choosing. (ECF No. 1, ¶ 39.) As such, Robinson's complaint "just alleges a

prohibition against possession of the books while in prison; he does not allege a deprivation of his ownership in the books." *Munson*, 673 F.3d at 638. Also, according to Robinson's own allegations, he received the process that he was due for the property deprivation because he was able to challenge the deprivation at the disciplinary hearing including presenting evidence and providing testimony. *Tonn v. Dittman*, 607 Fed App'x 589, 590 (7th Cir. 2015) (citing *Superintendent Mass. Corr. Inst Walpole v. Hill*, 472, 445, 445 (1985)). He may not proceed on a Fourteenth Amendment due process claim for the confiscation of his property.

Robinson also claims the defendants violated his Fourteenth Amendment due process rights when they denied his request for parole and when they gave him 60 days in segregation. Due process protections are triggered only if Robinson had a protected liberty interest in parole and avoiding segregation. *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). A prisoner of the State of Wisconsin does not have a liberty interest in parole. *Grennier v. Frank*, 453 F.3d 442, 444-45 (7th Cir. 2006). Robinson alleged that he was scheduled to go before the PRC. This means he only had the opportunity to receive parole; he was not guaranteed parole. Parole is a discretionary decision based on many factors, so denying him parole does not mean that he has lost anything.

Additionally, he does not have a liberty interest in avoiding segregation. "Whether a prisoner has a liberty interest implicated by special confinement relies on whether the confinement imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway*, 734 F.3d at

743 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). To determine whether a plaintiff has a liberty interest, courts "look[] to 'the combined import of the duration of the segregative confinement *and* the conditions endured.'" *Id.* (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)) (emphasis in original). "Although relatively short terms of segregation rarely give rise to a prisoner's liberty interest, at least in the absence of exceptionally harsh conditions, such an interest *may* arise from a long term of confinement combined with atypical and significant hardships." *Id.* (emphasis in original). The Seventh Circuit has "noted that 'six months of segregation is not such an extreme term and, standing alone, would not trigger due process rights.'" *Id.* (quoting *Marion*, 559 F.3d at 698). Robinson does not allege that he experienced any significant hardships while spending 60 days in segregation.

Even if Robinson had demonstrated that he had a liberty interest, his allegations do not suggest that his due process rights were violated. The Seventh Circuit has clarified that "inmates facing only disciplinary action like segregation, rather than disciplinary action affecting the length of their carceral sentence, like a reduction in good-time credit," are entitled to only "informal due process." *Ealy v. Watson*, 109 F.4th 958, 966 (7th Cir. 2024). "[I]nformal due process requires only that an inmate is provided (1) notice of the reasons for the inmate's placement in segregation and (2) an opportunity to present his views, for instance, in a written statement or at a hearing." *Id.* According to the complaint, Robinson received notice of the charges in the conduct report and was able to present his version of

what happened at disciplinary hearings. Robinson alleges that he did not receive sufficient notice of all the evidence that would be presented and that he was not allowed to present all the evidence he wanted, but that is not necessary for sufficient due process. *See Westerfer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012) (prisoners only require "some notice" of the reason for the proposed action). By his own allegations, Robinson received the process he was due. He may not proceed on a due process claim for deprivation of a liberty interest.

Robinson claims that he was slandered when Grey informed his daughter that he was a gang leader. Robinson fails to state a claim for slander because "the Supreme Court has held that slander is not actionable under a constitutional tort theory: 'the weight of our decisions establishes no constitutional doctrine converting every defamation by a public official into a deprivation of liberty . . . .'" *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 262 (7th Cir. 1999) (quoting *Paul v. Davis*, 424 U.S. 693, 702 (1976)). In other words, defamation and slander "are *state-law* claims. A Wisconsin resident who wants to sue another Wisconsin resident for lying about him may do so in *state* court, but not in *federal* court." *Lynch v. Holder*, No. 19-cv-1601-pp, 2020 WL 998542, at *3 (E.D. Wis. Feb. 28, 2020) (emphasis in original).

Robinson also claims that Mentzel and Schlicht retaliated against him when he issued Robinson a conduct report after Robinson told him he was going to sue for the due process violations. To state a retaliation claim, a plaintiff must allege that "(1) [the plaintiff] engaged in an activity protected by the First Amendment; (2) he

suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). The Seventh Circuit has not definitively resolved the issue of whether a threat to file suit is a protected activity under the First Amendment, but a case out of Northern District of Indiana, *Drogosz v. Newkirk*, Case No. 3:22-CV-387-DRL-MGG, 2023 WL 2237756 (N.D. Ind. Feb. 23, 2023), in which the court reviewed Seventh Circuit precedent is instructive and persuasive. After reviewing Seventh Circuit cases, the *Drogosz* court concluded that "[b]ased on the persuasive weight of six Seventh Circuit cases" issued in the last 20 years, it was not an error to determine that the plaintiff's "threat to sue was not protected by the First Amendment." *Id.* at *3-*7 (examining the six cases in detail to justify the conclusion, including cases that considered a threat to file grievances analogous to the threat to file suit and a non-precedential case that clearly "held inmate threats to sue were not protected by the First Amendment.") Because Robinson did not engage in protected activity, he may not proceed on a retaliation claim.

To the extent that Robinson is claiming a substantive due process claim pursuant to the Fourteenth Amendment because Mentzel allegedly fabricated a reason to give him a conduct report, he may not proceed on that claim. "[E]ven assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is generally found in the *procedures* mandated by due process." *Lagerstom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006)(emphasis in original).

Robinson alleges that he was ultimately found not guilty of this conduct report, so he received remedy for the allegedly fabricated conduct report through the due process procedures put in place.

Robinson also claims that Sandhal failed to properly investigate his inmate complaints and as a result denied him access to the courts. Prisoners have no constitutional right to an investigation of their grievances. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007.) Additionally, prison officials who deny grievances "but who otherwise did not cause or participate in the underlying conduct" cannot be held liable under § 1983. *See Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). While there are some narrow circumstances where a complaint examiner may be held liable for handling a complaint with deliberate indifference, Robinson does not sufficiently allege such circumstances here. *See Burks v. Raemisch,* 555 F.3d 592 (7th Cir. 2009). At best Robinson presents a conclusory allegation that Sandhal intentionally mishandled his complaint, which is not enough to state a claim. While courts are to liberally construe *pro se* plaintiffs' complaints, courts cannot "accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Twombly*, 550 U.S. at 570. For the same reasons, Robinson cannot proceed on claims against Warden Olson because Robinson alleges that all Olson did was review Robinson's letters about staff actions, and Robinson did not allege that Olson participated in the underlying conduct.

Additionally, Robinson does not allege an access to courts claim against Sandhal. "Prisoners have the right to 'adequate, effective, and meaningful' access to the courts." *Blanck v. Vannatta*, 115 Fed. App'x. 884, 886 (7th Cir. 2004) (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (7th Cir. 1977)). However, to state a claim for denial of access to the courts, "a prisoner must demonstrate that he suffered an actual injury, that is, that actions by the defendants hindered his ability to pursue a non-frivolous legal claim." *Id*. At best, he is alleging that Sandhal's actions did not allow him to properly exhaust his administrative remedies. However, if that is the case, Robinson would be able to address that issue should the defendants raise it as a defense.

As for Robinson's failure-to-train claim, for a defendant to be held liable, there needs to be an underlying constitutional violation. *Doxtator v. O'Brein*, 39 F.4th 852, 864 (7th Cir. 2022). As explained above, Robinson does not sufficiently allege any constitutional violations, so he may not proceed with a failure-to-train claim. For the same reasons, he may not proceed with a claim against any of the defendants in their official capacities. *Id.*

Because there are no remaining federal claims, the court declines to take supplemental jurisdiction over his state law claims. *See* 28 U.S.C. §1367(c); *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015).

Robinson fails to state any claim upon which relief may be granted. Although courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so where the amendment would be futile. *See Boyd*

*v. Bellin*, No. 20-3087, 2021 WL 479769 (7th Cir. Feb. 10, 2021). Robinson's complaint was incredibly thorough in its allegations of fact—to the point where he pled himself out of his claims by providing so many details. As such, Robinson would be unable to fix the issues with his claims by amending his complaint.

**THEREFORE, IT IS ORDERED** that Robinson's motion for leave to proceed without prepayment of the filing fee (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Robinson's motion to expedite screening (ECF No. 4) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the agency having custody of Robinson shall collect from his institution trust account the $314.72 balance of the filing fee by collecting monthly payments from Robinson's prison trust account in an amount equal to 20% of the preceding month's income credited to his trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Robinson is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Robinson is confined.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 6th day of August, 2026.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge